UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY SMITH,<br><br>   Plaintiff,<br><br>   v.<br><br>RONALD DAVIS,<br><br>   Defendant. | Case No. 19-cv-08152-SI<br><br>**ORDER DENYING MOTION TO PROCEED**<br><br>Re: Dkt. No. 13 |

Petitioner Troy Smith, an inmate at San Quentin State Prison, is currently serving a 26-year sentence. Petitioner filed the instant motion for leave to proceed with a second habeas petition pursuant to 28 U.S.C. § 2244. Dkt. No. 7 (Mot. to Proceed). The Court hereby DENIES petitioner's motion for failing to satisfy 28 U.S.C. § 2244(b).

**BACKGROUND**

Petitioner's case arises from the robbery of Lang's Jewelry Store ("Lang's") near Union Square in San Francisco. Dkt. No. 2 at 13 (Second Petition). Late on Sunday, April 7, 2003, the robbers entered the vacant restaurant next door to Lang's, cut a hole in the wall adjoining the vacant restaurant to Lang's safe room, and entered the safe room. Dkt. No. 11 at 7 (Opp.). When the store employees came in the following morning, two robbers were waiting and forced them to open the store's safes. *Id.* The robbers tied up the employees and dumped jewelry into bags, ultimately absconding with over four million dollars' worth of Lang's merchandise. Dkt. No. 2 at 13 (Second Petition). During the robbery, the employees also saw a third person in the vacant restaurant through the hole in the wall; they were unable to identify that person. Dkt. No. 11 at 7 (Opp.). An employee identified petitioner's brother, Dino Smith, as one of the robbers. Dkt. No. 7 at 3 (Mot. to Proceed).

1  Dino Smith was convicted by jury trial. *Id.* Additionally, fingerprint evidence connected George
2  Turner to the robbery. Dkt. No. 11 at 8 (Opp.). Mr. Turner was arrested wearing a watch stolen
3  from Lang's, and his hotel room contained a bag of Lang's jewelry worth over $650,000. *Id.* He
4  was convicted after taking an *Alford* plea (*See* 400 U.S. 25 (1970)). Dkt. No. 7 at 3 (Opp.).

Petitioner was convicted primarily on fingerprint evidence from two items found at the crime scene—a newspaper found in the vacant restaurant and a poster board found in Lang's near the hole cut in the wall. Dkt. No. 7 at 4 (Mot. to Proceed); Dkt. No. 11 at 8 (Opp.). Inspector Daniel Gardner, the lead investigator on the case, asserted he found the poster board on April 7, 2003, and the newspaper on April 9, 2003. Dkt. No. 7 at 4 (Opp.).

Despite his counsel's representation that petitioner would turn himself in, petitioner fled and disappeared for three years, ultimately surrendering in 2006. Dkt. No. 11 at 8 (Opp.). Before the robbery, petitioner made his final payment on his apartment in Oakland. *Id.* On April 25, 2003, police went to petitioner's apartment and found it completely emptied and freshly cleaned. *Id.* In the garage of petitioner's apartment, police encountered a man with "cleaning supplies, men's clothing, and a box of correspondence in petitioner's name"; they also found earrings stolen from Lang's in the man's car. *Id.* at 8-9. The man claimed he received the earrings from Debbie Warner, the girlfriend of petitioner's brother, Dino Smith. *Id.* at 9. Later, police found petitioner's wallet and a box of petitioner's correspondence at Ms. Warner's apartment. *Id.*

Petitioner was charged with four counts of second-degree robbery with excessive taking, four counts of false imprisonment, two counts of second-degree burglary, one count of conspiracy, and an enhancement for possession of a firearm. Dkt. No. 2 at 1-2 (Second Petition). On October 20, 2006, he was convicted by a jury trial and found guilty of all counts and enhancements. *Id.* at 2. Petitioner was sentenced to 26 years in state prison. *Id.*

## II.     Procedural Background

### a.  First Habeas Petition

On April 12, 2011, petitioner filed his first writ of habeas corpus in the United Stated District Court for the Northern District of California pursuant to 28 U.S.C. § 2254. *See Smith v. Swarthout*,

Case No. 11-cv-01791 SI; Dkt. No. 7 at 2 (Mot. to Proceed). Petitioner initially raised a single issue, arguing his due process rights were denied according to *Jackson v. Virginia*, 443 U.S. 307 (1979) because the prosecution had failed to prove all necessary elements of robbery for a conviction.[1] Dkt. No. 7 at 2 (Mot. to Proceed). While petitioner's federal writ of habeas corpus was pending, his counsel received *Brady* material from the San Francisco District Attorney's office, about lead investigator Daniel Gardner's past misconduct; this evidence had not been presented at trial. *Id.*

Subsequently, petitioner requested and received leave from the district court to amend his pending federal habeas petition to include the *Brady* claim, and to hold the federal habeas petition in abeyance until petitioner exhausted his California state court remedies. *Id.* On March 12, 2012, petitioner filed his amended petition in San Francisco Superior Court; it was denied on January 14, 2013. Dkt. No. 11 at 6 (Opp.). Subsequently, he filed his petition with the California Court of Appeal; it was summarily denied on March 28, 2013. *Id.* Petitioner then requested review from the California Supreme Court, which denied review on June 12, 2013. *Id.*

After petitioner exhausted his state court remedies, he filed his amended habeas petition in this Court on August 16, 2013 (the "first petition"). Dkt. No. 2 at 3 (Second Petition). In this petition, he raised due process claims pursuant to *Jackson* and *Brady*. *Id.* at 4. Regarding the *Brady* claim, petitioner argued that Inspector Gardner took the newspaper and poster board from petitioner's apartment when he visited petitioner two days after the robbery and planted them at the crime scene. *Id.* at 3. Furthermore, petitioner argued the *Brady* evidence suppressed by the prosecution revealed Inspector Gardner's dishonesty, thereby bolstering petitioner's claim that Inspector Gardner planted the newspaper and poster board. *Id.*

On July 17, 2015, the Court denied the first petition. Dkt. No. 11 at 1-2 (Opp.). The Court granted a certificate of appealability. *Id.* at 2. Petitioner appealed to the Ninth Circuit, which affirmed the denial on October 21, 2016. *Id.*

---

[1] Petitioner argued that because the prosecution theorized the robbery was an inside job, and one of the elements of robbery is the specific intent to deprive the owner of their property, the prosecution failed to prove this element and thus he was denied due process. Dkt. No. 2 at 2 (Second Petition).

### b. Second Habeas Petition

After petitioner's first habeas application was denied, he received a declaration from George Turner, now deceased, who was convicted in the robbery.[2] Dkt. No. 7 at 6 (Mot. to Proceed). Mr. Turner's declaration states petitioner was not involved in the robbery and that Deputy District Attorney Jerry Coleman offered Mr. Turner leniency for not testifying on petitioner's behalf. *Id.* Dkt. No. 7 at 35, 37 (Turner Decl. ISO Mot. to Proceed). It also explains how both Mr. Turner's and petitioner's fingerprints could have ended up on the newspaper and poster board that Inspector Gardner asserted he found at the crime scene, corroborating petitioner's theory that Inspector Gardner planted evidence. Dkt. No. 7 at 35-36 (Turner Decl. ISO Mot. to Proceed). On February 2, 2017, petitioner filed his second habeas petition in state court. He raised two claims, both based on the newly acquired declaration made by Mr. Turner. Dkt. No. 11 at 7 (Opp.). On April 3, 2017, the San Francisco Superior Court denied the petition on its merits. *Id.* Petitioner appealed to the California Court of Appeal, which summarily denied it on July 13, 2017. *Id.* The petitioner requested review from the California Supreme Court, which summarily denied review on August 15, 2018. *Id.*

On May 17, 2019, petitioner requested leave from the Ninth Circuit to file a second or successive federal habeas petition regarding his 2003 conviction. Dkt. No. 11 at 7 (Opp.). The Ninth Circuit granted petitioner leave on November 20, 2019. *Id.* Petitioner then filed his amended habeas petition with this Court on December 20, 2019 (the "second petition"). Dkt. No. 2 at 8 (Second Petition). On January 13, 2020, the Court requested the parties address whether petitioner satisfied the requirements of 28 U.S.C. § 2254(b) for filing a second or successive habeas petition. Dkt. No. 4 at 2 (Order). That motion is now at issue. Dkt. No. 7 (Mot. to Proceed).

Petitioner's motion to proceed articulates two claims : (1) Mr. Turner's declaration makes petitioner's *Brady* claim regarding the State's wrongful suppression of Inspector Gardner's misconduct material; and (2) Mr. Coleman's prosecutorial misconduct violated petitioner's Constitutional rights to due process. Dkt. No. 7 at 7 (Mot. to Proceed).

---

[2] Petitioner received Mr. Turner's declaration in December 2016. Dkt. No. 7 at 6. Mr. Turner died on December 15, 2016, 9 days after signing his declaration. *Id.*

**LEGAL STANDARD**

This Court can only review a second or successive habeas petition once the petitioner has obtained leave from the Ninth Circuit. 28 U.S.C. § 2244(b)(3)(A). Once the Ninth Circuit grants leave and the petition is filed, the District Court must make a threshold determination if the petition can proceed based on 28 U.S.C. § 2244 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." *Tyler v. Cain*, 533 U.S. 656, 661 (2001). Any claims presented in a second or successive habeas petition that were presented in prior habeas petitions will be dismissed. *Id.*; 28 U.S.C. § 2244(b)(1).

If the petitioner "asserts a claim that was *not* presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions":

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Tyler*, 533 U.S. at 661-662 (emphasis in original); 28 U.S.C. § 2244(b)(2)(B). Petitioner does not rely on new rules of Constitutional law so only 2244(b)(i) and (ii) are relevant for the instant motion.

**DISCUSSION**

**I.     Petitioner's *Brady* Claim Must be Dismissed**

"Under AEDPA, a state prisoner is entitled to one fair opportunity to seek federal habeas relief from his conviction." *Banister v. Davis*, 140 S. Ct. 1698, 1699 (2020). There are "stringent limits on second or successive habeas applications. Among those restrictions, a prisoner may not reassert any claims presented in a prior application . . . and may bring a new claim only in limited situations." *Id.* (internal quotation marks and citations omitted). Claims raised in new petitions that were previously presented are considered successive and "shall be dismissed." 28 U.S.C.

5

§ 2244(b)(1). The Ninth Circuit has held that a "ground is successive if the basic thrust or gravamen of the legal claim is the same [as one stated in a previous petition], regardless of whether the basic claim is supported by new and different legal arguments." *United States v. Allen*, 157 F.3d 661, 664 (9th Cir. 1998) (quoting *Molina v. Rison*, 886 F.2d 1124 (9th Cir. 1989) (internal quotation marks omitted).

In petitioner's first habeas application, he raised a *Brady* claim regarding the State's failure to timely disclose evidence of Inspector Gardner's prior misconduct. Dkt. No. 7 at 4. Petitioner argued this evidence, if presented, would have impugned Inspector Gardner's credibility, ultimately changing the jury's verdict. Dkt. No. 2 at 9-10 (Second Petition). Under *Brady*, evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different." *United States v. Bagley*, 473 U.S. 667, 668 (1985). In reviewing this habeas application, the Ninth Circuit determined the wrongfully suppressed *Brady* evidence was not material, though it would have been highly probative for impeachment purposes. Dkt. No. 2-1, Ex. 2 at 16-17 (9th Cir. Memorandum ISO Second Petition). "[I]t was not unreasonable for the state court to conclude that there is not a reasonable probability that any change in the way the jurors viewed Gardner's testimony would have changed the jury's verdict." *Id.*

Petitioner argues the *Brady* claims raised in his first and second petitions are different. Dkt. No. 7 at 11 (Mot. to Proceed). The government asserts that under the "substantial similarity" rule, the two claims have the same "basic thrust or gravamen," and thus the *Brady* claim raised in the second petition must be dismissed. Dkt. No. 11 at 15-16 (Opp.) (quoting *Gimenez v. Ochoa*, 821 F.3d 1135, 1141 (9th Cir. 2016) (internal quotation marks omitted). The Court agrees with the government. There is no difference between the *Brady* claims raised in the two petitions; the only distinction is that in the second petition, the petitioner is relying on new *evidence* to prove the claim's materiality. Petitioner concedes that "[t]here is some overlap between the current proposed amended habeas petition, and the first petition," but asserts that "Turner's dying declaration supplies the plausible explanation [for how Gardner planted evidence], and thus renders the issue of Gardner's dishonesty, and the suppression of the *Brady* evidence, material and significant." Dkt. No. 12 at 16 (Reply). By petitioner's own admission, he does not present any newly suppressed

6

evidence that would "recast his successive *Brady* claim." Dkt. No. 11 at 16 (Opp.). Since the "basic thrust or gravamen" of the two claims are the same, the *Brady* claim raised in his second petition is successive and must be dismissed pursuant to § 2244 (b)(1). *Allen*, 157 F.3d at 664.

## II. Petitioner's Remaining Claim Regarding Coleman's Prosecutorial Misconduct Fails Under § 2244 (b)(2)

### a. Petitioner Did Not Exercise Due Diligence to Obtain Potentially Exculpatory Evidence

For petitioner's remaining claim to be granted review, it must satisfy the requirements in § 2244(b)(2)(i) and § 2244 (b)(2)(ii). First, to satisfy § 2244(b)(2)(i), the evidence upon which his claim is based must have been previously unavailable to him despite him exercising due diligence. "[T]he due diligence inquiry is a function of whether . . . [the petitioner] had some indication before filing his initial petition that the alleged exculpatory evidence existed." *Solorio v. Muniz*, 896 F.3d 914, 920 (2018). Thus, the due diligence determination "turns on two factors: (1) whether the petitioner was on inquiry notice to investigate further, and, if so, (2) whether the petitioner took reasonable steps to conduct such an investigation." *Id.* at 921.

The defense argues petitioner knew of "Turner's involvement in the heist and Turner's supposed ability to exonerate him since Turner visited petitioner and told him about the heist on the day of the crime in 2003." Dkt. No. 11 at 11 (Opp.). The defense also argues petitioner knew Mr. Turner could be a favorable witness since the time of his trial,[3] but "petitioner presents no evidence that he actually attempted to subpoena Turner and use the coercive powers of the court to compel his testimony." *Id.* Further, petitioner did not once contact Mr. Turner between his trial and receiving the declaration, nor did he discuss the case or probe Mr. Turner for exculpatory information when petitioner spoke with him on the phone in 2015. *Id.*

Petitioner argues he could not have obtained the declaration earlier by exercising due diligence because he did not know why Mr. Turner had refused to testify on petitioner's behalf. He explains that since Mr. Turner only provided his declaration because Mr. Turner no longer feared "retaliation by law enforcement" due to his bleak prognosis; Mr. Turner "would not have come

---

[3] Dkt. No. 7 at 37 (Turner Decl. ISO Mot. to Proceed).

7

forward sooner, notwithstanding any efforts or due diligence by petitioner to get him to do so." Dkt. No. 7 at 37-38 (Turner Decl. ISO Mot. to Proceed); Dkt. No. 12 at 17-18 (Reply).  The Court acknowledges petitioner and Mr. Turner's relationship and ability to communicate was likely complicated by the fact that Mr. Turner refused to testify on petitioner's behalf and that both were subsequently incarcerated.  It is plausible that Mr. Turner would not have provided any exculpatory evidence earlier, even if petitioner probed him.  However, petitioner did not make *any* attempts to obtain this exculpatory evidence from Mr. Turner after his trial, even though he was aware that Mr. Turner was supposedly capable of exonerating him. Thus, petitioner did not exercise due diligence.

Further, regardless of whether petitioner exercised due diligence in obtaining Mr. Turner's declaration, his motion to proceed fails because Mr. Turner's declaration is inadmissible.

### b. Mr. Turner's Declaration is Inadmissible Evidence

Petitioner's claim regarding Mr. Coleman's prosecutorial misconduct is solely based on Mr. Turner's declaration, which is hearsay that "would not be admissible in a future criminal proceeding[], and no reasonable factfinder could rely on it in evaluating petitioner's guilt." Dkt. No. 11 at 12 (Opp.); *see also In re Nealy*, 223 F. App'x 358, 366 (5th Cir. 2007) (finding petitioner was not entitled to proceed with a second or successive habeas petition because his only newly acquired evidence was a hearsay affidavit from one of his investigating attorneys).

### i. Mr. Turner's Declaration is Not a Dying Declaration

The petitioner argues Mr. Turner's declaration "is admissible pursuant to the dying declaration exception to hearsay," reasoning all that is required for a statement to be deemed a "dying declaration" is for it to be made when the declarant is near death.  Dkt. No. 12 at 22 (Reply) (citing *Shepard v. United States*, 290 U.S. 96, 99-100 (1933); *Carver v. United States*, 160 U.S. 533 (1896)). This misstates the law.  According to Federal Rule of Evidence 804(b)(2), if a declarant is unavailable as a witness, "a statement that the declarant, while believing the declarant's death to be imminent, *made about its cause or circumstances*" will not be excluded by the rule against hearsay. Fed. R. of Evid. 804(b)(2) (emphasis added); *see also* Cal. Evid. Code § 1242 ("Evidence of a

statement made by a dying person *respecting the cause and circumstances of his death* is not made inadmissible by the hearsay rule if the statement was made upon his personal knowledge and under a sense of immediately impending death") (emphasis added).

The dying declaration exception to the rule against hearsay is "based on the belief that persons making such statements are highly unlikely to lie." *Idaho v. Wright*, 497 U.S. 805, 820 (1990). Mr. Turner's doctor allegedly gave him a prognosis of "one year +/-." Dkt. No. 7 at 38 (Turner Decl. ISO Mot. to Proceed). While Mr. Turner was severely ill and did in fact die nine days after signing the declaration, he was not facing death such that the trustworthiness of his statement was guaranteed and thus qualify for the dying declaration hearsay exception. *See Mattox v. United States*, 146 U.S. 140, 151 (1892), *superseded on other grounds by Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 858 (2017) ("it is the impression of almost immediate dissolution, and not the rapid succession of death . . . that renders the testimony admissible") (internal quotation marks omitted); *Saldivar v. Lewis*, 585 F. App'x 693, 694 (9th Cir. 2014) (shooting victim's identification of who shot him an hour and a half before he died from the wounds was a dying declaration); *Sternhagen v. Dow Co.*, 108 F. Supp. 2d 1113, 1118 (D. Montana, Nov. 3, 1999) (statement made by declarant who "expected to live another three to six months" due to his stage 4 non-Hodgkins lymphoma was not made with a sense of impending death and thus did "not provide sufficient indicia of trustworthiness to satisfy the dying declaration exception to the hearsay rule").

More importantly, Mr. Turner's declaration does not discuss the cause or circumstances of his death; rather, it is exclusively concerned with the circumstances of Lang's robbery. Since this goes directly against both the relevant federal and state rules of evidence regarding dying declarations, Mr. Turner's statement is not admissible under this exception to the rule against hearsay. Fed. R. of Evid. 804(b)(2); *see also* Cal. Evid. Code § 1242.

### ii. Mr. Turner's Declaration Does Not Qualify Under the Residual Hearsay Exception

Under Federal Rule of Evidence 807, a statement that would otherwise be considered hearsay is admissible if:

> (1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. Rules Evid. Rule 807; 28 U.S.C.A. FRE Rule 807. This rule is not a "broad hearsay exception, but rather is to be used rarely and in exceptional circumstances." *Fong v. American Airlines, Inc.,* 626 F.2d 759, 763 (9th Cir. 1980). "Essentially, the district court must determine whether the totality of the circumstances surrounding the statement establish its reliability sufficiently enough to justify foregoing the rigors of in-court testimony (e.g., live testimony under oath, cross-examination) that ordinarily guarantee trustworthiness." *United States v. Trenkler*, 61 F.3d 45, 58 (1st Cir. 1995) (citing Michael H. Graham, *Federal Practice and Procedure: Evidence,* § 6775, at 737–40 (1992)).

There are certain "recurring factors" that are "particularly significant" to consider when determining the trustworthiness of a statement potentially to be admitted under the residual hearsay exception. 2 McCormick on Evid., *The Residual Hearsay Exception* § 324 (8th ed. 2020). Although not an exhaustive list, some commonly considered factors are:

> [W]hether the declarant had a motivation to speak truthfully or otherwise; . . . . the time lapse between event and statement; whether the statement was under oath; whether the declarant was subject to cross-examination at the time the statement was made; the relationship between the declarant and the person to whom the statement was made; whether the declarant has recanted or reaffirmed the statement or the consistency of multiple statements; whether the statement was recorded; and whether the declarant's firsthand knowledge is clearly demonstrated.

*Id.* Petitioner maintains the declaration is trustworthy because it (1) describes the robbery in detail; (2) is consistent with the evidence presented at trial; (3) was made by Mr. Turner "on his death bed, in order to 'right . . . [his] moral compass'"[4]; (4) is authenticated; and, (5) is corroborative of other evidence.[5] Dkt. No. 12 at 23-31 (Reply).

---

[4] Dkt. No. 7 at 38 (Turner Decl. ISO Mot. to Proceed).

[5] Rule 807 was amended in 2019. Petitioner relies on the old version of Rule 807 when arguing Mr. Turner's declaration should be admissible under the residual hearsay exception. The Court evaluates Mr. Turner's declaration under the new requirements of Rule 807 and references petitioner's relevant arguments under the new rule.
  One of the significant changes to Rule 807 is that, to qualify for the exception, the hearsay evidence (1) need not prove a material fact nor (2) must the evidence be verified by the "equivalent guarantees of trustworthiness" of other hearsay exceptions. Fed. R. of Evid., Rule 807. Instead, the

10

1    While some of the factors for determining the declaration's trustworthiness weigh in
2    petitioner's favor, they are not sufficient when balanced against the totality of the circumstances of
3    petitioner's case. The declaration was put in writing, and Mr. Turner naturally had firsthand
4    knowledge about the robbery and his alleged conversations with District Attorney Coleman.
5    However, Mr. Turner stating that he wants to right his moral compass does not inherently make his
6    statements credible, nor does the fact that he was severely ill when writing the declaration. The
7    declaration was made 13 years after the robbery occurred. "[T]here was no witness" to the
8    declaration's making, and "[t]here is no authentication of the signature." Dkt. No. 11 at 14 (Opp.).
9    It was not made under oath and "coincidentally appeared 10 years after trial but just weeks after the
10   Ninth Circuit denied petitioner's first petition." *Id.* The relationship between Mr. Turner and the
11   petitioner is complicated and does not shed light on the declaration's truthfulness.[6] The evidentiary
12   record contains no statements made at trial alluding to prosecutorial misconduct by Mr. Coleman.
13   While Mr. Coleman's meetings with Mr. Turner without his counsel present would suggest
14   prosecutorial misconduct,[7] without any other evidence to corroborate these meetings, Mr. Turner's
15   statements alone do not establish with sufficient credibility that such meetings occurred. Mr.
16   Turner's own criminal history and the fact that he was not subject to cross-examination further

---

revised rule requires courts to consider the totality of the circumstances when evaluating the trustworthiness of the evidence. Further, it requires "the court to consider corroborating evidence in the trustworthiness enquiry . . . [but] recognizes that the existence or absence of corroboration is relevant to, but not dispositive of, whether a statement should be admissible under this exception." *Id.* Additionally, the rule is applicable to hearsay that is not admissible under the Rule 803 and 804 exceptions. *Id.*

[6] Mr. Turner's declaration states that his relationship with petitioner was "brother-like." Dkt. No. 7 at 38 (Turner Decl. ISO Mot. to Proceed). Despite this, Mr. Turner explains he agreed to "make a deal with the devil" at petitioner's expense due to his declining health. *Id.* Petitioner appends his own declaration to his motion to proceed, which explains his relationship with Mr. Turner in the years following the trial. However, this declaration would not be admissible in a future hearing, since "[r]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1391 (2011).

[7] Petitioner asserts: "Turner's statement in his dying declaration – specifically that Deputy District Attorney Jerry Coleman offered him leniency in exchange for his not testifying to petitioner's non-involvement in the robbery, notwithstanding Turner's emphatic insistence that petitioner was not involved in the robbery – set forth prosecutorial misconduct and interference with petitioner's federal constitutional rights to due process, to present witnesses in his defense, and to a fair trial." Dkt. No. 7 at 7. (Mot. to Proceed).

11

speaks to the trustworthiness, or lack thereof, of the declaration. *See United States v. Roberson*, 124 Fed. Appx. 860, 863 (5th Cir. 2005) (finding that an affidavit with a suspect notarization, which was submitted by someone who had prior felony convictions and was unavailable to be cross-examined "did not contain the circumstantial guarantees of trustworthiness necessary to be admitted under Rule 807").[8]

The trustworthiness of the declaration is the "key substantive criteria for admission" under the residual hearsay exception. 30B Charles Alan Wright, Arthur R. Miller & Jeffrey Bellin, *Federal Practice and Procedure* § 7063 (2020 ed.) Since trustworthiness is lacking, the Court need not consider the declaration's probative nature.

### c. The Facts Underlying Petitioner's Claim Regarding Prosecutorial Misconduct Would Not be Sufficient to Establish That No Reasonable Fact Finder Would Have Found the Petitioner Guilty

Even if Mr. Turner's declaration were admissible, it would still not "be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." For one, hearsay affidavits, even if admissible, are seen as "particularly suspect." *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *see also Smith v. Baldwin*, 510 F.3d 1127, 1146 (2007) (finding that even when considering two recantation affidavits, "it is more likely than not that a reasonable juror would conclude that [petitioner] failed to establish by a preponderance of the evidence" that petitioner was not guilty of felony murder).

In his motion, petitioner presents no evidence Mr. Turner agreed to not testify at petitioner's

---

[8] While the ability to cross-examine the declarant is not dispositive for a determination of trustworthiness, multiple courts "have weighed the lack of opportunity for cross examination . . . as among the factors supporting a conclusion that hearsay statements lacked sufficient indicia of trustworthiness to be admitted under Rule 807." *MicroTechnologies, LLC v. Autonomy, Inc*., 2018 WL 6696793 (N.D. Cal. Dec. 20, 2018); *see also United States v. Rodriguez*, 316 F. App'x 612, 615 (9th Cir. 2009) (finding that statements that were "not recorded . . . [or] made under oath" were not sufficiently trustworthy because there was "no way to tell whether they were made voluntarily" and "the government would have been unable to cross-examine the declarant"); *United States v. Valdez-Soto*, 31 F.3d 1467, 1472 (9th Cir. 1994)("the degree of reliability necessary for admission [of an out-of-court statement] is greatly reduced where . . . the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule") (*quoting United States v. McPartlin*, 595 F.2d 1321, 1350-51 (7th Cir. 1979)).

trial as a condition of his plea agreement; such unrecorded conditions are unenforceable. "Mr. Turner's declaration must be viewed in light of the evidentiary record as a whole,[9] a record the jury determined was sufficient to find petitioner guilty. Not only were petitioner's fingerprints found on two separate objects at the crime scene, but he also avoided meeting with the police regarding the robbery, fled, and turned himself in only three years later. He stopped paying rent and abandoned his apartment after the robbery. When officers visited petitioner's apartment, it was cleaned, and they encountered a man in the garage that had correspondence tied to the petitioner and jewelry from the robbery. Petitioner fails to show that no reasonable fact finder would find him guilty when considering the alleged prosecutorial misconduct along with the entire evidentiary record.

### III. Petitioner Does Not Pass Through the Actual Innocence Gateway

A federal court may hear the merits of secondary or successive habeas claims if the failure to hear the claims would constitute a miscarriage of justice. The Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 and n.32.

The required evidence to pass through this gateway must create a colorable claim of actual innocence, showing the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id.* at 321. Petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). On this

---

[9] "[T]he facts underlying the claim, if proven and viewed in light of the evidence as a whole, [need to] . . . be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(ii).

complete record, the court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* Ultimately, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him." *Lee v. Lampert*, 653 F.3d 929, 946 (9th Cir. 2011) (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

Petitioner fails to pass through the actual innocence gateway. First, petitioner's claim is not supported by reliable evidence. As stated above, Mr. Turner's declaration, the sole new evidence petitioner presents, falls neither into the dying declaration or residual exception to the rule against hearsay—it is an out of court statement that is not sufficiently trustworthy and would be inadmissible at an evidentiary hearing. The rest of the evidence petitioner references in support of his innocence is not new or reliable; he simply rehashes old claims[10] that are unpersuasive and fail to convince the Court of his innocence. To prevail on his motion, petitioner must show that considering Mr. Turner's declaration in light of the entire evidentiary record, it is more likely than not that a reasonable factfinder could not find him guilty. He has failed to do so. The San Francisco Superior Court accurately pointed out substantial evidence from the fingerprints found at the crime scene and the circumstances of petitioner's arrest supported his conviction. Dkt. No. 7, Ex. 4 at 10-11 (S.F. Super. Ct. Order). Since petitioner does not make a sufficient showing under *Schlup*, he fails to establish a colorable claim of actual innocence.

## CONCLUSION

The Court hereby DENIES petitioner's motion to proceed.

**IT IS SO ORDERED**.

Dated: June 26, 2020

_____
SUSAN ILLSTON
United States District Judge

---

[10] *See* Dkt. No. 12 at 31-32 (Reply).